**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-00077(BAH)** |
| v. | : | |
| | : | |
| **IRAJ JAVID,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Iraj Javid to 21 days' incarceration, 36 months' probation, 60 hours' community service, and $500 in restitution.

**I.      Introduction**

Defendant Iraj Javid, 32 years old and a former employee of the Washington Metropolitan Area Transit Authority, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.8 million in losses.[1]

---

[1] Although the Statement of Offense in this matter, filed on August 12, 2022, (ECF No. 19 at ¶ 6) reflects a sum of more than $1.4 million for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Defendant Javid pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of 21 days' incarceration is appropriate in this case because: (1) Javid unlawfully entered the Capitol at the East Rotunda Doors, the site of the one of the most brutal breaches of the Capitol on January 6, 2021; (2) Javid was not deterred from entering and remaining inside the Capitol even though he observed multiple assaults on U.S. Capitol Police ("USCP") officers at the East Rotunda Doors; (3) Javid stood mere feet away from rioters who were pushing and shoving officers while aggressively yelling at them; (4) Javid entered the East Rotunda Doors by pushing past USCP officers who were attempting to secure the door; (5) once inside the Capitol, Javid penetrated the U.S. Capitol all the way to the Lobby belonging to Speaker of the House Nancy Pelosi on the second floor; and (6) Javid spent a significant length of time—28 minutes—inside the Capitol.

To be clear, in arriving at its sentencing recommendation, the government is also considering several mitigating factors. Following his crime, Javid has proactively taken steps to accept responsibility for this crime. He has cooperated with law enforcement, including debriefing with the FBI, and accepted responsibility and entered a plea agreement at the first available opportunity.

The Court must also consider that Javid's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Javid's crime support a sentence of 21 days' incarceration, 36 months' probation, 60 hours' community service, and $500 in restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1–7.

*Defendant Javid's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Javid and two others traveled from Javid's home in Virginia to Washington, D.C., to attend the "Stop the Steal" rally. Following the rally, Javid joined the crowd and walked to the Capitol grounds. Javid moved past bike rack fencing that had been pushed aside to allow the crowd through and green plastic fencing that had been knocked down and rolled up. Defendant and the two others then made their way to the East Rotunda Door entrance to the U.S. Capitol, where a crowd had gathered and was attempting to push open the door.



Figure 1

At approximately 2:26 p.m., Javid entered the Capitol Building through the East Rotunda Doors, pushing past U.S. Capitol Police officers who were attempting to close the doors. *See* Exhibit 1 (Video exhibit) at 2:26:40.

Although he was not wearing a mask outside, Javid put on a hat and pulled up his mask on entering the Capitol. Once inside the Capitol Building, Javid walked to the Rotunda (Figure 2), then onto Statuary Hall (Figure 3), then onto the Speaker's Lobby (Figures 4, 5, and 6).



Figure 2



Figure 3



Figure 4



Figure 5



Figure 6

Following the riot, Javid texted another friend who had traveled to attend the rally, stayed at Javid's home, and similarly joined in the riot. In the text exchange, the friend, referring to coverage of the riot in the media, stated how "[i]t's been rough listening to all our hero's [sic] talk down about what we did." Javid responded, "So true, it would be different if they were there. Try also still, for some reason, think that our elections are going to be fair from here out."

Javid has admitted that he knew at the time he entered the Capitol Building that he did not have permission to do so, and that he paraded, demonstrated, or picketed inside the Capitol Building.

*The Charges and Plea Agreement*

On March 1, 2022, the United States charged Javid by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On March 3,

2022, Javid was arrested near his then-workplace. On March 11, 2022, the United States charged Javid by four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On July 19, 2022, pursuant to a plea agreement, Javid pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Picketing, and Demonstrating in a Capitol Building. By plea agreement, Javid agreed to pay $500 in restitution to the Architect of the Capitol.

*Javid's Post-Plea Conduct*

Following his plea, Javid has cooperated with law enforcement officials, including debriefing with the FBI. Throughout this case, it appears that Javid has been compliant with his release conditions.

### III.    Statutory Penalties

Javid now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Javid faces up to six months of imprisonment and a fine of up to $5,000. Javid must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence,

§ 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days' incarceration, 36 months' probation, 60 hours' community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Javid's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Javid, the absence of violent or destructive acts is not a mitigating factor. Had Javid engaged in such conduct, he or she would have faced additional criminal charges.

Before entering the Capitol on January 6, 2021, Javid was nearly at the front of a massive crowd of rioters outside the East Rotunda Door, where he pushed past the officers attempting to close the East Rotunda Doors. (For example, in Figure 1 below, one of the officers attempting to secure the door is to the left of Javid as he entered, identified by the arrow.)



Figure 1

Then, Javid traveled through the Capitol, through the Rotunda and Statuary Hall, and eventually making his way towards the Speaker Pelosi's Lobby. Throughout his 28 minutes in the Capitol Building, Javid witnessed numerous things that would have led any law-abiding person to know they should leave, but he persisted to penetrate far into the Capitol.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 21 days' incarceration, 36 months' probation, 60 hours' community service, and $500 in restitution in this matter.

**B.  The History and Characteristics of Javid**

As set forth in the PSR, Javid had several stability factors present in his life at the time of the offense, including an eight-year marriage, three children, no criminal history and having been employed by the Washington Metropolitan Transit Authority. ECF 22 ¶¶ 25–31, 36, 48.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration,

as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that

behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Javid based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Javid has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 USC § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

---

[2] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48–49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those

cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33–34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For

that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23–24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. David Johnston*, 21-cr-182 (BAH), another Section 5104(e)(2)(G) case, this Court sentenced the defendant to 21 days of incarceration as a condition of 36 months of probation, 90 days of home detention, a $2,500 fine, and $500 in restitution. Like Javid, Johnston traveled throughout the Capitol building, witnessed violent confrontations between rioters and

police officers, and displayed recalcitrant behavior on January 6. On January 6, Johnston was a practicing attorney, which this Court determined was a particularly aggravating factor because an attorney of law should have known better than to engage in an obviously unlawful attack on the United States Capitol building. Johnston also smoked marijuana inside the Capitol Building, demonstrating disrespect for the building and the country. Although Javid is not an attorney and did not smoke marijuana in the building, he entered through the East Rotunda Doors, which was the site of violence between rioters and law enforcement, and nevertheless ignored officers' warnings to evacuate, pushing officers attempting to close the doors and entering the Capitol. However, Javid also cooperated with law enforcement after being charged in this case, including being debriefed with the FBI on two occasions.

In *United States v. Munn, et al.*, 21-cr-474 (BAH), the Court sentenced Thomas Munn, Dawn Munn, Kayli Munn, Joshua Munn, and Kristi Munn on their pleas to Section 5104(e)(2)(G). The Court sentenced all five defendants to 36 months of probation, 60 hours of community service, and restitution of $500, while also sentencing Thomas, Dawn, and Kristi Munn to 90 days of home confinement, and parents Thomas and Dawn Munn to 14 days of intermittent incarceration. The defendants, all members of a family, had ignored tear gas and entered the Capitol via a broken windows at the Senate wing doors, roamed throughout the building witnessing physical confrontations between rioters and police, and spending a total of approximately 52 minutes in the Capitol.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

15

result that "different district courts may have distinct sentencing philosophies and may emphasize

and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its

own set of facts and circumstances regarding the offense and the offender." *United States v.*

*Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence

differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have

sentenced that defendant." *Id*. at 1095.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these

factors, the government recommends that this Court sentence Defendant to 21 days' incarceration,

36 months' probation, 60 hours' community service, and $500 in restitution.[3] Such a sentence

---

[3] Numerous judges of this Court have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. *See, e.g.,* 18 U.S.C. § 3561(a)(3); *see, e.g.*, *United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case); *see generally* Appellee's Brief for the United States, *United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law.

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(1), which authorize limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, *e.g.*, for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992). In this district, at least two judges have similarly imposed multiple terms of imprisonment consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-

protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *Niall M. O'Donnell*
        Assistant Chief—Detailee
        D.C. Bar No. 991519
        Fraud Section, Criminal Division
        U.S. Department of Justice
        300 N. Los Angeles St., Suite 2001
        Los Angeles, CA 90012
        Email: niall.odonnell@usdoj.gov
        Ph: (202) 257-3295

---

19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

<u>**CERTIFICATE OF SERVICE**</u>

On this 19th day of January, 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<u>s/ *Niall M. O'Donnell*</u>
Assistant Chief—Detailee
D.C. Bar No. 991519
Fraud Section, Criminal Division
U.S. Department of Justice
300 N. Los Angeles St., Suite 2001
Los Angeles, CA 90012
Email: niall.odonnell@usdoj.gov
Ph: (202) 257-3295

18